UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY LEE PORTIS,

      Petitioner,

                                                   CASE NO. 11-CV-10614
v.                                         HON. MARK A. GOLDSMITH

LLOYD RAPELJE,

      Respondent.
                             /

**<u>OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

**I.   INTRODUCTION**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254.   Michigan prisoner Roy Lee Portis ("Petitioner") was convicted of possession with intent to deliver 450 grams or more but less than 1000 grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(ii), possession of marijuana, Mich. Comp. Laws § 333.7403(2)(d), and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a joint jury trial before separate juries with co-defendant Maria Carroll, in Oakland County Circuit Court.  He was sentenced as a second habitual offender, Mich. Comp. Laws § 769.10, to 15½ to 30 years imprisonment on the cocaine conviction, a concurrent term of 192 days on the marijuana conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2008.  In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence and the conduct of the prosecutor.  For the reasons set forth, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and grants leave to

proceed in forma pauperis on appeal.

## II.  BACKGROUND

Petitioner's convictions arise from the police seizure of drugs and a gun from a home in Pontiac, Michigan during the execution of a search warrant on October 12, 2007.  The Michigan Court of Appeals described the facts, which are presumed correct on habeas review, see 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On October 12, 2007, Pontiac police executed a search warrant at a two-story house, located at 58 Nelson. When the officers entered the house, defendant Carroll was at the top of the stairs holding defendant Portis's four-year-old child and defendant Portis was exiting the master bedroom.
>
> In the master bedroom, the officers found a digital scale with cocaine residue, a corner tie plastic bag containing more than three grams of marijuana, and a pipe on top of a dresser. A Metro PCS cellular telephone was also on the dresser.[FN1] The top drawer of the dresser contained 14 loose nine-millimeter rounds, an empty nine-millimeter shell box, and a Metro PCS receipt in the name of "William Sullivan" that corresponded with the cellular telephone found on top of the dresser.[FN2] In the top drawer of a nightstand, the officers discovered 12 individually wrapped rocks of cocaine. On top of another nightstand was an opened Ajax false bottom can that contained two corner tie bags of crack cocaine; one bag had one rock of cocaine and the other had 13 individually wrapped rocks of crack cocaine. Inside that nightstand were several forms of correspondence to defendants Portis and Carroll. "Just inside" the bedroom closet, the officers found a nine-millimeter highpoint rifle with eight rounds in the magazine that were consistent with ammunition found in the dresser drawer. A brick of cocaine in a gallon-size Ziploc bag wrapped in duct tape and a corner tie bag containing three individually wrapped rocks of cocaine were also in the closet.
>
> [FN1.] An officer monitored the cellular telephone that was confiscated from the master bedroom. When the telephone rang, the caller asked for "Jay" and requested narcotics.
>
> [FN2.] An officer explained that it is not difficult to obtain a Metro PCS cellular telephone using a false name, because it can be paid for in cash and no identification is required. The officer further explained that individuals involved in drug trafficking often use this method to prevent their cellular telephones from being traced back to them.
> Large male clothing, along with size 13 male shoes, and petite female clothing

>were found in the master bedroom. According to one of the officers, the large male clothing was consistent with defendant Portis's quite larger physique and the petite female clothing was consistent with defendant Carroll's smaller size. In the pocket of a 5XL sweatshirt, the officers found a corner tie of crack cocaine. A framed photo of defendant Portis sat on top of one of the dressers.

People v. Portis, No. 286423, 2009 WL 3837339, at *1 (Mich. Ct. App. Nov. 17, 2009) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising several claims of error, including the same claims raised on habeas review. The court denied relief and affirmed Petitioner's convictions. Id. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Portis, 779 N.W.2d 797 (Mich. 2010).

Petitioner thereafter instituted this federal habeas action, raising the following claims:

I. The prosecution failed to submit sufficient evidence to prove he was guilty beyond a reasonable doubt of the offenses of possession with intent to deliver cocaine and felony firearm.

II. He was denied a fair trial by prosecutorial misconduct for arguing facts not in evidence.

Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

### III. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 et seq., governs this case because Petitioner filed his petition after the AEDPA's effective date. Lindh v. Murphy, 521 U.S. 320, 336 (1997). The AEDPA provides:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

3

adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); Bell v. Cone, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); Bell, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862

(2010) (quoting Lindh, 521 U.S. at 333, n.7); Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court"). Section 2254(d) "does not require a state court to give reasons

before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. See Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

## IV. ANALYSIS

### A. Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his possession with intent to deliver cocaine conviction and his felony firearm conviction. In particular, he claims that the prosecution failed to establish that he possessed the cocaine and the weapon found at the residence.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged." In re Winship, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). Martin v. Mitchell, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the Jackson standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006) (quoting Jackson, 443 U.S. at 324 n.16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." Matthews, 319 F.3d at 788-89.

    Under Michigan law, the elements of possession with intent to deliver 450 grams or more but less than 1000 grams of cocaine are : (1) the defendant knowingly possessed cocaine; (2) the defendant intended to deliver cocaine to someone else; (3) the substance possessed was actually cocaine and the defendant must have known it was cocaine; and (4) the substance weighed 450 grams or more but less than 1,000 grams. Mich. Comp. Laws §

333.7401(2)(a)(ii); People v. Wolfe, 489 N.W.2d 748, 752 (Mich. 1992).  Possession may be either actual or constructive, and may be joint or exclusive.  Wolfe, 489 N.W.2d at 753.  Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the controlled substance.  Id. at 754.  The controlling question is whether the defendant had dominion or control over the controlled substance.  People v. Konrad, 536 N.W.2d 517, 521 (Mich. 1995).  Possession may be found even when the defendant is not the owner of the recovered narcotics.  Wolfe, 489 N.W.2d at 753.

The elements of felony firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense.  Mich. Comp. Laws § 750.227b; People v. Perkins, 686 N.W.2d 237, 239-40 (Mich. Ct. App. 2004).  Possession of a firearm under this statute can be actual or constructive and can be proven by circumstantial evidence.  People v. Hill, 446 N.W.2d 140, 143 (Mich. 1989).  "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant."  Id.  Direct or circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime, People v. Jolly, 502 N.W.2d 177, 180 (Mich. 1993), including possession.  People v. Fetterley, 583 N.W.2d 199, 202 (Mich. Ct. App. 1998).  To convict under an aiding and abetting theory, the prosecution must prove that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement which aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime when he gave the aid or encouragement.  People v. Carines, 597 N.W.2d 130, 135 (Mich. 1999); see also People v. Moore, 679 N.W.2d 41, 49 (Mich. 2004).

Applying the Jackson standard, the Michigan Court of Appeals found that the prosecution presented sufficient evidence that Petitioner possessed the drugs and weapon found at the residence and denied relief on this claim. The court explained:

> Defendant Portis argues that the evidence was insufficient to sustain his convictions because there was no evidence that he possessed the controlled substances or weapon found in codefendant Carroll's home. We disagree.
>
> When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. People v. Wolfe, 440 Mich. 508, 515, 489 N.W.2d 748 (1992), amended 441 Mich. 1201, 489 N.W.2d 748 (1992). This Court will not interfere with the trier of fact's role of determining the weight of evidence or the credibility of witnesses. Id. at 514–515, 489 N.W.2d 748. It is for the trier of fact to decide what inferences can be fairly drawn from the evidence and to judge the weight it accords to those inferences. People v. Hardiman, 466 Mich. 417, 428, 646 N.W.2d 158 (2002). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." People v. Nowack, 462 Mich. 392, 400, 614 N.W.2d 78 (2000).
>
> At trial, the prosecutor advanced the theory that defendant Portis was guilty as a principal or as an aider or abettor. A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." People v. Izarraras–Placante, 246 Mich. App. 490, 495–496, 633 N.W.2d 18 (2001) (quotation omitted).
>
> "'Aiding and abetting' describes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime." People v. Carines, 460 Mich. 750, 757, 597 N.W.2d 130 (1999) (quotation omitted). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." People v. Lawton, 196 Mich. App. 341, 352, 492 N.W.2d 810 (1992). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, and the defendant's participation in the planning or execution of the crime. Carines,

supra at 757–758, 597 N.W.2d 130.

Defendant Portis challenges only the possession element of the two drug offenses. Possession of a controlled substance may be either actual or constructive, and may be joint as well as exclusive. Wolfe, supra at 520, 489 N.W.2d 748. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband. Id. at 521, 489 N.W.2d 748. A person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. Id. at 520, 489 N.W.2d 748. Instead, some additional connection between the defendant and the contraband must be shown. Id. "The essential question is whether the defendant had dominion or control over the controlled substance." People v. Konrad, 449 Mich. 263, 271, 536 N.W.2d 517 (1995). "[C]ircumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession." People v. Fetterley, 229 Mich. App. 511, 515, 583 N.W.2d 199 (1998).

Viewed in a light most favorable to the prosecution, the circumstantial evidence established that defendant Portis had constructive possession of the drugs or assisted codefendant Carroll in possessing the drugs. Defendant Portis concedes that the evidence established that he had a domestic relationship with codefendant Carroll, the listed owner of the house. Defendant Portis was present in the house, along with his four-year-old son, when the search warrant was executed. The drugs were found in the master bedroom, and defendant Portis was coming out of that bedroom when the search warrant was executed. A digital scale with cocaine residue and a bag of marijuana were in plain view on top of a dresser in the master bedroom. On top of a nightstand in plain view was an opened Ajax false bottom that contained two bags of crack cocaine. Inside that nightstand was a document belonging to defendant Portis. On the closet floor was a corner tie bag containing three individually wrapped rocks of cocaine. While the bag of cocaine was not in plain view, an officer was able to see the bag when he walked into the closet and bent down. In addition, very large male clothing and shoes were found in the master bedroom; the only other clothing present in the room was consistent with codefendant Carroll's petite size. In the pocket of a 5XL sweatshirt that was between the bed and the wall was a corner tie bag of crack cocaine that was consistent with the other cocaine rocks found in different places in the bedroom. In addition, framed photographs of defendant Portis and his son were in the home. This evidence, viewed in a light most favorable to the prosecution, was sufficient to permit a rational trier of fact to reasonably infer that defendant Portis was not merely present in the home, but stayed there and had constructive possession of the drugs found there. Nowack, supra.

Although defendant Portis claims that codefendant Carroll alone possessed the

> drugs, a jury could reasonably infer from his domestic relationship with codefendant Carroll, the proximity of his personal items to the drugs found throughout the master bedroom, and the fact that he had just left the bedroom containing the contraband that he had joint constructive possession of the drugs found in the home. Defendant Portis notes the different address on his license, but an expert in narcotics trafficking explained that it is normal for a drug dealer to have a different address on his driver's license to prevent a search of his actual residence if he is stopped. The evidence was sufficient to sustain defendant Portis's convictions for possession with intent to deliver 450 or more but less than 1,000 grams of cocaine and possession of marijuana.
> With respect to the felony-firearm conviction, for purposes of this offense, "the term 'possession' includes both actual and constructive possession.... [A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." People v. Burgenmeyer, 461 Mich. 431, 438, 606 N.W.2d 645 (2000), quoting People v. Hill, 433 Mich. 464, 470–471, 446 N.W.2d 140 (1989).
>
> Viewed in a light most favorable to the prosecution, the same evidence that enabled the jury to conclude that defendant Portis had constructive possession of the drugs also established a basis for the jury to conclude beyond a reasonable doubt that he possessed the weapon. There was testimony that the firearm was found in the master bedroom "just inside" the closet. While the firearm was not in plain view, the evidence showed that it was not so hidden that defendant Portis did not have access to it. An officer indicated that when he walked into the closet, he could see the firearm. Again, there was evidence that clothing consistent with defendant Portis's large size was in the master bedroom. Given the location of the firearm, defendant Portis's proximity to the closet where the firearm was found, and the proximity of his belongings to the firearm and ammunition, the jury could reasonably infer that he knew of the firearm's location and that the firearm was reasonably accessible to him. Nowack, supra. The evidence was sufficient to sustain defendant Portis's conviction for felony-firearm.

Portis, 2009 WL 3837339, at **4-6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence to establish Petitioner's guilt as a principal or as an aider and abettor of the charged offenses. The trial testimony showed that Petitioner possessed or assisted in the possession of the drugs and the weapon found at the residence. Petitioner was in a relationship with

co-defendant Carroll, who owned the house, framed photographs of Petitioner and his son were in the house, and Petitioner and his son were present when the search warrant was executed. The drugs and the gun were found in the master bedroom.  Some drugs were in plain view on a dresser, some were hidden in a container on the nightstand, and some were in the bedroom closet. The gun was also in the bedroom closet.  All of those items were accessible to Petitioner, who exited the bedroom as the search began.  Documents belonging to Petitioner were found on the dresser and in the nightstand.  Male clothing and shoes, consistent with Petitioner's large size, including an oversized sweatshirt with cocaine in the pocket, were found in the bedroom.  The other clothing in the bedroom was female clothing consistent with co-defendant Carroll's smaller stature.  Considered in a light favorable to the prosecution, such evidence was sufficient to show that Petitioner was more than merely present in the home at the time of the search and to establish that he had constructive possession or joint constructive possession of the drugs and weapon found during the search.

   Petitioner challenges the jury's view of the facts and the inferences the jury drew from the testimony at trial.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  Jackson, 443 U.S. at 326; Martin v. Mitchell, 280 F.3d 594, 618 (6th Cir. 2002); see also Walker v. Engle, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.   Habeas relief is not warranted on this claim.

### B. Prosecutorial Misconduct Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by arguing facts not in evidence. Specifically, he claims that the prosecutor improperly argued that he was the person named "J" who received calls for drug buys on the cell phone found at the residence and by referring to the clothing and the dresser at the residence as "his" clothing.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." Berger v. United States, 295 U.S. 78, 88 (1935). Additionally, it is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. Darden v. Wainright, 477 U.S. 168, 182 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 646 (1974); Hodge v. Hurley, 426 F.3d 368, 380-81 (6th Cir. 2005). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (citing Donnelly); see also Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (confirming that Donnelly/Darden is the proper standard).

In this case, the Michigan Court of Appeals found that the prosecutor's remarks were proper and that any prejudice was mitigated by the trial court's jury instructions; thus, the court denied relief on this claim. The court explained:

> Defendant Portis also argues that he was denied a fair trial because the prosecutor impermissibly argued facts not in evidence. We disagree. This Court reviews preserved claims of prosecutorial misconduct case by case, examining the challenged remarks in context, to determine whether the defendant received a fair and impartial trial. People v. Bahoda, 448 Mich. 261, 266–267, 531 N.W.2d 659 (1995); People v. Rodriguez, 251 Mich. App. 10, 29–30, 650

13

N.W.2d 96 (2002).

Defendant Portis argues that during closing argument the prosecutor argued facts not in evidence and violated the trial court's earlier order when he argued that defendant Portis's nickname is "J" or "Jay." During the questioning of an officer regarding the confiscated cellular telephone and the calls intercepted after defendant Portis was arrested, an officer testified that the callers asked for "J" and asked to purchase narcotics. The officer also testified that, through his experience, he knew the identity of "J." Defense counsel objected on hearsay grounds to the officer testifying about the identify of "J" and how he learned the identity. Outside the jury's presence, the prosecutor made an offer of proof regarding a confidential informant and the court heard arguments. The court ruled that the officer could not identify defendant Portis as "J," and that the evidence should come in through the confidential informant or codefendant Carroll who would testify that she knew defendant Portis only as "J." The prosecutor chose not to reveal the confidential informant; thus, there was no testimony that defendant Portis is known as "J."

Subsequently, during closing argument, the prosecutor made the following argument:

> The cell phone from the dresser received calls to buy drugs. Again, he's claiming because it's in someone else's name, it's not his. He was leaving the room right as the officers approached. The cell phone was on the dresser and um—I believe they were asking for J. Remember, he's a junior. Sometimes with street names or nicknames you have to look at reasons. Sometimes the reasons are something silly they did in their past. Sometimes the reasons relate to the person's size or characteristics. And sometimes it's abbreviations for the name. In this case he's a junior so J makes sense.

A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence. People v. Stanaway, 446 Mich. 643, 686, 521 N.W.2d 557 (1994). Here, however, viewed in context, the prosecutor's remarks were not improper. Defendant Portis contends that the charging document did not identify him as a junior, and there was no evidence at trial that he is a junior. While that is true, the jury was aware of defendant Portis's status as a result of defense counsel presenting him to the jurors as "Roy Portis, *Jr*.," and indicating to them that he may be calling "Roy Portis, *Jr*. himself" and "Roy Portis, *Sr*." (emphasis added). Further, the prosecutor did not state that there was direct evidence that defendant Portis is J and that the cellular telephone belonged to him, but noted the evidence and urged the jury to use its common sense and everyday experiences when considering the evidence that reasonably supported those inferences. The prosecutor was free to argue the evidence and all reasonable

> inferences arising from it as they related to his theory of the case. See Bahoda, supra at 282, 531 N.W.2d 659.
>
> Defendant Portis also contends that the prosecutor argued facts not in evidence when he repeatedly referred to the male clothing found in the house as "his clothing" and "his dresser" during closing and rebuttal arguments.
>
> Defendant Portis objected to the prosecutor's use of the term "his" when referring to the clothing and dresser, and the court overruled the objections. As aptly stated by the trial court, the remarks constituted "[the prosecutor's] theory. This is his argument." We agree that the prosecutor's remarks constituted proper argument based on the evidence and reasonable inferences arising from it as they related to the prosecutor's theory. See Bahoda, supra.
>
> Furthermore, although the challenged remarks were not improper, we note that defendant Portis's right to a fair trial was also protected when, in response to the prosecutor's objection during defense counsel's closing argument, the court instructed the jury as follows:
>> Ladies and Gentlemen, just it's been kind of going both ways. And that happens sometimes. Just remember these are arguments of Counsel both that the Prosecutor made his closing and opening, same thing with [defense counsel]. These are arguments of Counsel. You'll be the Judges of what the facts are and what the evidence was in the case, okay?"
>
> The court also instructed the jury in its final instructions that the lawyers' comments are not evidence, that it was to decide the case based only on the properly admitted evidence, and that it was required to follow the court's instructions. The instructions were sufficient to dispel any possible prejudice. See People v. Long, 246 Mich. App. 582, 588, 633 N.W.2d 843 (2001).

Portis, 2009 WL 3837339 at *6-7.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The prosecutor reasonably argued that Petitioner was "J" based upon defense counsel's statement that Petitioner was Roy Portis Jr., that his father was Roy Portis Sr., and that his son was Roy Portis III, as well as the fact that the cell phone was found in the master bedroom of the home where Petitioner appeared to be residing with co-defendant Carroll and his son. Moreover, the prosecutor did not assert that there was direct

evidence that Petitioner was J or that the cell phone belonged to him. The prosecutor's argument was not improper under such circumstances. The prosecutor also reasonably argued that the male clothing and the dresser in the bedroom were "his" (Petitioner's) based upon Petitioner's relationship with co-defendant Carroll, the location of the items in the home, the large size of the clothing, and the documents belonging to Petitioner found on or in the dresser. It is well-settled that a prosecutor may argue reasonable inferences from the evidence. Byrd v. Collins, 209 F.3d 486, 535 (6th Cir. 2000). Petitioner has failed to show that the prosecutor's remarks were improper or that they denied him a fair trial.

Furthermore, to the extent that any of the prosecutor's remarks could be seen as improper, they were not so pervasive or misleading as to render the trial fundamentally unfair. Additionally, any potential prejudice to Petitioner was mitigated by the fact that the trial court properly instructed the jurors on the law, explained that the attorneys' comments were not evidence, and directed them to decide the case based solely on the evidence. Hamblin v. Mitchell, 354 F.3d 482, 495 (6th Cir. 2003); Knapp v. White, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003). Jurors are presumed to follow the court's instructions. See Penry v. Johnson, 532 U.S. 782, 799 (2001) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); United States v. Powell, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has failed to establish that the prosecutor engaged in misconduct rendering his trial fundamentally unfair. Habeas relief is not warranted on this claim.

## V. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal

habeas relief on the claims contained his petition. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. Id. at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings. Accordingly, the Court denies a certificate of appealability. However, the Court believes that an appeal could be taken in good faith; thus, the Court grants Petitioner leave to proceed in forma pauperis on appeal. See Fed. R. App. P. 24(a).

SO ORDERED.

Dated: June 10, 2013             s/Mark A. Goldsmith
     Flint, Michigan               MARK A. GOLDSMITH
                                               United States District Judge

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 10, 2013.

                                                      s/Deborah J. Goltz
                                                      DEBORAH J. GOLTZ
                                                      Case Manager